ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ALEXIS JAMES (NYBN 5603865)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Alexis.James@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 22-CR-00264-001 HSG |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| MICHAEL GREEN, | |
| Defendant. | |

**I.     INTRODUCTION**

The defendant, Michael Green, is a repeat-felon with a history of narcotics addiction. While the defendant has struggled with narcotics, he has successfully completed the CAP program after participating since 2022.

On July 14, 2022, the Government filed a single-count Information charging the defendant with one count of being a felon in possession of a firearm and ammunition, pursuant to 18 U.S.C. § 922(g)(1). On November 22, 2022, the defendant pled guilty to the sole count of the Information pursuant to a CAP plea agreement with the Government. This case is set for sentencing on July 31, 2024, before the Honorable United States District Judge Haywood S. Gilliam, Jr.

Based on the Government's plea agreement with the defendant and the defendant's success in the

1

CAP program, the Government recommends that a sentence of time served, and three years of supervised release is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a)(2).

## II.     OFFENSE AND RELATED CONDUCT

From February 2021 through September 2021, Contra Costa County Sheriff's Office (CCSO) investigated an unrelated individual for firearms and narcotics-related offenses. As a part of that investigation, CCSO obtained a ping warrant and learned that the individual often visited an address on East 12th Street in Pittsburg, California. Believing the individual might be visiting the location to supply their own drug and firearms-related conduct, officers ran a records check for the location. Officers observed that the location was connected to Michael Green, who was on active Post Release Community Supervision (PRCS) beginning on April 22, 2021 and ending April 21, 2024. The address was listed as Green's custody alternative information in September 2020. Officers further observed that Green had several previous arrests and convictions for both firearms and narcotics-related offenses.

Based on this information, officers surveilled the East 12th street location for 27 days, beginning on December 29, 2021. CCSO regularly observed Green in front of the residence working on vehicles and meeting with multiple individuals who came to the residence. Officers observed Green consistently use the gate in between the house and a detached garage on the south side of the residence. Green typically entered the garage as opposed to the actual residence.

Based on their observations, CCSO conducted a PRCS compliance check on January 26, 2021. When officers arrived at the location, Green's wife, answered the door and stated in sum and substance that Green was not in the residence. She further stated that Green slept in the garage most of the time. Officers then entered the detached garage and observed Green conscious, lying face down on the carpet with his hands tucked underneath his torso. Officers observed no other people in the garage. After officers instructed Green to get up several times, he eventually complied, and officers observed two plastic baggies underneath him that appeared to be torn open. Next to the baggies was a brown powdery substance which smelled like vinegar, which officers recognized to be powder heroin. Officers were unable to collect the suspected heroin because it appeared to be ground into the carpet as if someone were attempting to destroy or conceal it.

Pursuant to Green's PRCS terms, officers searched the detached garage where officers found Green. Officers recovered the following:

    a. a 9mm Ruger EC9 semi-automatic pistol loaded with a magazine containing approximately six unexpended 9mm cartridges located on top of a black toolbox near where Green was detained;



    b. a .556 caliber short-barrel Arrow M4 AR-15 style assault rile loaded with a magazine containing approximately 11 unexpended .223 cartridges located in a trash can;



    c. approximately 12.3 total grams of suspected fentanyl;
        i. 8.8 grams in a black plastic bag on the coffee table
        ii. 3.5 grams in a green backpack

    d. approximately 36.9 total grams of suspected heroin;
        i. 21.6 grams in a plastic baggie in the plastic bag on the coffee table
        ii. 12.3 grams in a plastic baggie in the plastic bag on the coffee table
        iii. 3.0 grams in a plastic baggie on the coffee table

    e.  approximately 2.7 grams of suspected methamphetamine;

    f.  approximately 7.3 grams of blue methamphetamine pills located in a plastic bag in a black toolbox;

    g.  approximately 6.5 grams of blue and white methamphetamine pills located in a plastic bag in a black toolbox;

    h.  multiple empty plastic baggies;

    i.  blender on the coffee table with suspected powder heroin and lactose residue inside;

    j.  large lactose bottle on the coffee table; and

    k.  three digital scales
         i.  black digital scale under the coffee table
         ii.  black digital scale in the black toolbox
         iii.  blue digital scale on the coffee table.




The black toolbox repeatedly referenced above is all the same toolbox. Officers also recovered approximately $1,640.00 in various denominations from Green's person. Officer also located indicia that Green resided at the location including mail and packages bearing his name. Officers placed Green under arrest, mirandized him, and took his statement. Green stated in sum and substance that he did not have a firearm, he only uses drugs, and that he got the money from winning a bet. Green further stated

that the AR-15 was built by someone selling it for cheap, but that Green did not purchase it. Officers voice recorded the statement.

After conducting the interview, officers searched Green's cellphone pursuant to the PRCS terms. Officers observed at least 15 conversations with different people regarding narcotics sales. Officers also observed a photograph of a Ruger EC9 firearm that appears to be the same firearm recovered from the garage.

### III.     CRIMINAL HISTORY

At the time of conduct, the defendant was approximately 46 years old. He has a criminal history dating back to 1994, including several narcotic trafficking felony convictions and several firearms-related felony convictions. PSR ¶¶ 30-45.

### IV.     SENTENCING GUIDELINES CALCULATIONS

The Government agrees with the United States Probation Department's Sentencing Guidelines calculation. PSR at ¶¶ 18-27 (Base Offense Level 22, Specific Offense Characteristics +4 levels for possession of a firearm in connection with another felony, and 14 Criminal History Points). A Total Offense Level of 23 with a Criminal History Category VI, yields an advisory sentencing range of 92 to 115 months of imprisonment.

### V.     APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(5) the need to provide restitution to any victims of the offense.

## VI. RECOMMENDATION

Based upon a consideration of the plea agreement and the defendant's successful completion of CAP, the Government respectfully recommends a sentence of time served followed by three years of supervised release. Such a sentence would be sufficient, but not greater than necessary.

The defendant has a lengthy criminal history dating back to when he was 19 years old. He has established a pattern of criminal behavior racking up several felony convictions. However, the defendant has been participating in a combination of CAP and drug treatment since 2022. While the defendant struggled at times during his CAP participation, overall, he endured the setbacks and pressed forward through his treatment and programming.

Given his perseverance in the CAP program, the defendant has fulfilled his promises in the plea agreement and thus the Government is fulfilling its promises as well. The Government commends the defendant's efforts and recommends a sentence of time served.

## VII. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of time served, followed by a 36-month term of supervised release.

DATED: July 25, 2024                               Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

  /s/ *Alexis James*
ALEXIS JAMES
Assistant United States Attorney

6